# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

STEVE CAITO,

      Plaintiff,

                                        CASE NO.:  8:15-cv-02472-EAK-TBM

vs.

OCWEN LOAN SERVICING, LLC,

      Defendant.

_____/

## PLAINITFF'S RESPONSE IN OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Plaintiff, STEVE CAITO, hereby responds to Defendant OCWEN LOAN SERVICING, LLC's Motion to Dismiss (Dkt. 45), and in support thereof, states as follows:

1.	On December 18, 2015, Plaintiff filed his Amended Complaint (Dkt. 15), in which he alleged that Defendant OCWEN LOAN SERVICING, LLC (hereafter "Defendant" or "OCWEN") engaged in a pattern of abusive debt collection conduct in connection with calls placed to his cellular telephone number that violated the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227, *et seq*., (hereafter "TCPA") (Count I) and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55, *et seq.*, (hereafter "FCCPA") (Count II).

2.	On January 25, 2016, OCWEN filed its Answer and Affirmative Defenses (Dkt. 23) and its Motion to Stay (Dkt. 24). Specifically, OCWEN requested that this Court stay this action pending the outcome of Spokeo v. Robins, 135 S. Ct. 1892 (U.S. Apr. 27, 2015) (No. 13-1339), which involved a dispute about whether Article III standing was appropriately conferred in a lawsuit premised upon technical violations of certain subsections of the Fair Credit Reporting Act ("FCRA"). OCWEN suggested that "the outcome of Spokeo will determine and control

whether this Court has subject-matter jurisdiction over civil actions alleging violations of the TCPA and FCCPA," and that the Supreme Court's decision as to whether the conduct that allegedly violated the FCRA provisions at issue in <u>Spokeo</u> caused an "injury in fact" sufficient to confer Article III standing will necessarily be "dispositive" as to Plaintiff's standing under the TCPA.

3.     On March 14, 2016, this Court issued its Endorsed Order granting Defendant's Motion to Stay the case pending the Supreme Court's ruling in <u>Spokeo</u> (Dkt. 38).

4.     On May 16, 2016, the Supreme Court issued its decision in <u>Spokeo</u>, vacating the Ninth Circuit's decision on the basis that the Ninth Circuit failed to consider both characteristics of the injury-in-fact requirement – that the injury be "concrete *and* particularized." <u>Spokeo, Inc. v. Robins</u>, __ U.S. ___, 136 S.Ct. 1540, 1545 (May 16, 2016). In vacating the Ninth Circuit's decision, the Supreme Court merely held that the Ninth Circuit's "standing analysis was incomplete" because it "did not address … whether the particular procedural violations alleged in [that] case entail a degree of risk sufficient to meet the concreteness requirement." <u>Id.</u> at 1550. The Supreme Court took "no position as to whether the Ninth Circuit's ultimate conclusion—that Robins adequately alleged an injury in fact—was correct." <u>Id.</u>

5.     On May 26, 2016, Defendant filed its Notice of Decision in <u>Spokeo v. Robbins</u> (Dkt. 39).

6.     On June 21, 2016, this Court issued its Order (Dkt. 41) lifting the stay on the case, and ruling that "[t]he Defendant's Notice of Decision is certainly not the appropriate vehicle for the Defendant to challenge the pending amended complaint and the Court will not order a new complaint based on that sparse pleading" but allowing OCWEN the opportunity to file a motion to dismiss the Amended Complaint.

7.      On July 11, 2016, OCWEN filed its Motion to Dismiss Plaintiff's Amended Complaint (Dkt. 45), contending that "[the] amended complaint fails to allege a concrete injury—a clear pleading requirement confirmed in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), *as revised* (May 24, 2016). Absent such an allegation, [Plaintiff] does not have Article III standing to pursue his claims and his amended complaint should be dismissed." (Dkt. 45 p. 1).

8.      For the reasons fully set forth in the Plaintiff's below memorandum of law, Defendant's Motion to Dismiss the Amended Complaint (Dkt. 45) should be denied as Plaintiff has sufficiently alleged a concrete injury under Article III.

## MEMORANDUM OF LAW

## I.      Motion To Dismiss Standard

"The purpose of a Rule 12(b)(6) motion is to test the facial sufficiency of the statement of claim for relief." Brooks v. Blue Cross & Blue Shield of Florida, Inc., 116 F.3d 1364, 1368 (11th Cir. 1997). "It is read alongside Fed. R. Civ. P. 8(a), which requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Id. "The rule is not designed to strike inartistic pleadings or to provide a more definite statement to answer an apparent ambiguity, and the analysis of a 12(b)(6) motion is limited primarily to the face of the complaint and attachments thereto." Id. "The question is not whether the claimant will ultimately prevail but whether the complaint is 'sufficient to cross the federal court's threshold.'" Carr v. NCO Fin. Sys., Inc., CIV.A. 11-2050, 2011 WL 6371899 (E.D. Pa. 2011).

"When reviewing a motion to dismiss, a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff." Muradas v. M & T Bank, 13-60178-CIV, 2013 WL 3224023, at *2 (S.D. Fla. 2013) (citing Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir.2012); Miccosukee Tribe of

Indians of Fla. v. S. Everglades Restoration Alliance, 304 F.3d 1076, 1084 (11th Cir.2002)). "Upon engaging in this analysis, a court should deny a motion to dismiss where the pleading asserts non-conclusory, factual allegations, that, if true, would push the claim 'across the line from conceivable to plausible.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 680 (2009)); Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1289 (11th Cir.2010) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (explaining that allegations in a complaint "must ... contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'")). "A claim is facially plausible when the plaintiff's factual allegations 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Iqbal, supra, 556 U.S. at 678). As fully set forth below, Defendant OCWEN's Motion to Dismiss (Dkt. 15) should be denied.

## II.   Plaintiff's Amended Complaint Sufficiently Alleges a Concrete Injury Under Article III

Defendant OCWEN contends that Plaintiff's Amended Complaint should be dismissed because "[w]hile the prayer for relief in the TCPA claim contains boilerplate language seeking 'actual damages,' the amended complaint sets forth no facts explaining how [Plaintiff] suffered any concrete injury. As a result, [Plaintiff] has failed to satisfy Article III, and this Court lacks subject-matter jurisdiction." (Dkt. 45 p. 3-4). Defendant also contends that "Spokeo is directly applicable to this case, which is based on alleged technical violations of the TCPA." (Dkt. 45 p. 4).

OCWEN's aforementioned conclusions misconstrue the decision in Spokeo as it applies to the TCPA claim asserted by the Plaintiff in this action, and OCWEN is incorrect in its contention that Plaintiff has failed to sufficiently allege a concrete injury that was caused by OCWEN in his Amended Complaint (Dkt. 15).

Article III, section 2 of the United States Constitution limits the judicial power of federal courts to cases and controversies. To qualify as a case or controversy, a plaintiff in federal court must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. Spokeo, 136 S.Ct. at 1547. To establish an injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." Id. at 1548.

As in Spokeo, only the requirement of concreteness is at issue here. As fully explained below, the types of harm that OCWEN's unlawful robocalls at issue caused the Plaintiff clearly meet the requirement of concreteness as articulated in Spokeo.

A.      Spokeo Does Not Change the Well-Established Law Governing Article III Standing

In Spokeo, the Supreme Court addressed the injury-in-fact requirement for Article III standing. Spokeo breaks no new ground. The Supreme Court merely vacated the Ninth Circuit's decision for failing to conduct the "concreteness" inquiry in its Article III standing analysis. Spokeo confirmed the long-established principle that injury-in-fact is the first of three elements required for Article III standing. Spokeo, 136 S.Ct. at 1547. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Id. at 1548. In vacating the Ninth Circuit's decision, the Supreme Court noted that although the Ninth Circuit had addressed the "particularization" requirement of injury-in-fact—i.e., the requirement that the injury "must affect the plaintiff in a personal and individual way"—it had failed to consider whether the defendant's alleged violations of FCRA procedural requirements caused a "concrete" injury, and had thus omitted the "concreteness" requirement of injury-in-fact in its analysis. Id. at

1548, 1550.

The Supreme Court's decision in <u>Spokeo</u> acknowledges that the concreteness requirement of injury-in-fact can be satisfied by tangible injuries as well as intangible injuries. <u>Id.</u> at 1549. Where the injury is intangible, <u>Spokeo</u> summarizes two approaches to meet this requirement. First, courts should consider "whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts. <u>Id.</u>  As the Court noted, "the law has long permitted recovery by certain tort victims even if their harms may be difficult to prove or measure." <u>Id.</u> (citing <u>Restatement (First) of Torts</u> §§ 569 (libel), 570 (slander per se) (1938)).

Second, Congress may "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." <u>Id.</u> (quoting <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 578, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)). The Supreme Court observed that "Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." <u>Id.</u> The Court explained that although "Article III standing requires a concrete injury even in the context of a statutory violation … the violation of a procedural right granted by statute can be sufficient *in some circumstances* to constitute injury in fact." <u>Id.</u> (emphasis added).[1] "In other words, a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." <u>Id.</u> (emphasis in original). The Court explained, however, that a plaintiff "could not, for example, allege a bare procedural violation, *divorced from any concrete harm*, and satisfy the injury-in-fact requirement of Article III." <u>Id.</u>

---

[1] (citing <u>Federal Election Comm'n v. Akins</u>, 524 U.S. 11, 20–25, 118 S.Ct. 1777, 141 L.Ed.2d 10 (1998) (confirming that a group of voters' "inability to obtain information" that Congress had decided to make public is a sufficient injury in fact to satisfy Article III); <u>Public Citizen v. Department of Justice</u>, 491 U.S. 440, 449, 109 S.Ct. 2558, 105 L.Ed.2d 377 (1989) (holding that two advocacy organizations' **\*1550** failure to obtain information subject to disclosure under the Federal Advisory Committee Act "constitutes a sufficiently distinct injury to provide standing to sue")).

(emphasis added).

In analyzing these principles in the context of the subject FCRA claim, the Supreme Court observed that in enacting the FCRA, Congress "sought to curb the dissemination of false information by adopting procedures designed to decrease that risk." Id. The Court explained, however, that "[a] violation of one the FCRA's procedural requirements may result in no harm," providing specific examples of such instances. Id.[2] As such, a violation of the FCRA's statutory procedural requirements is not one of the circumstances in which a violation of a statutory procedural right alone can constitute injury in fact. The Court thus held that in the context of the FCRA claims at issue, "Robbins could not satisfy the demands of Article III by alleging a bare procedural violation." Id.

These "no harm" FCRA procedural violations—i.e., "bare procedural violation[s], *divorced from any concrete harm*"—do not similarly exist in actions alleging violations of § 227(b)(1)(A)(iii) of the TCPA, as this provision of the TCPA does not consist of a "set of procedural requirements" designed to "decrease the risk" of a certain problem occurring, like the FCRA claim at issue in Spokeo; rather, it is an outright prohibition of specific conduct directed toward a specific party—i.e., initiating autodialed calls to a cellular telephone number without the called party's prior express consent. The TCPA is further distinguished from the FCRA in this respect by the fact that Congress included Congressional findings with the statutory text of the TCPA, and explicitly defined the TCPA as an intrusion of privacy statute.[3] In enacting the TCPA,

---

[2] For example, the Court noted that "even if a consumer reporting agency fails to provide the required notice to a user of the agency's consumer information, that information regardless may be entirely accurate." Id. The Court further observed that "not all inaccuracies cause harm or present any material risk of harm", noting that "[i]t is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm." Id.

[3] See, e.g., Mims v. Arrow Fin. Servs., LLC, __ U.S. ___, 132 S. Ct. 740, 745, 181 L.Ed.2d 881 (2012) (observing that "'automated or prerecorded telephone calls' made to private residences, Congress found, were rightly regarded by recipients as 'an invasion of privacy.'" (quoting TCPA, 105 Stat. 2394, § 2(10))). The Congressional findings further state that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance

Congress clearly defined "the class of persons entitled to bring suit"—i.e., the called party—and identified "the injury [the TCPA] seeks to vindicate"—i.e., the invasion of the called party's privacy; as such, the TCPA's private right of action properly "relate[s] the injury to the class of persons entitled to bring suit,"[4] and is entirely incapable of resulting in the type of "no harm" procedural violations that <u>Spokeo</u> pointed out as being possible under the FCRA.

Because a violation of the TCPA necessarily involves the transmission of unwanted autodialed calls, texts or faxes to the called party without his consent, various harms and risks of harm are *inherent* in a TCPA violation, as fully described below.[5] For these reasons, "[w]ith respect to the TCPA, the Eleventh Circuit has held that Congress intended to create a concrete injury where the statute was violated, meaning so long as the plaintiff has been affected personally by the conduct that violates the statute, standing exists." <u>Rogers v. Capital One Bank (USA), N.A.</u>, __ F.Supp.3d ___, 2016 WL 3162592, *2 (June 3, 2016).[6]

In <u>Rogers</u>, which was decided post-<u>Spokeo</u>, the court considered the defendant's motion to dismiss the plaintiffs' TCPA claim for lack of Article III standing. There, the plaintiffs alleged that the defendant made non-emergency calls to the plaintiffs' cellular phones using an automatic telephone dialing system, and continued calling after the plaintiffs' instructions to stop calling. <u>Id.</u> at *1 The court observed that the Eleventh Circuit in <u>Palm Beach</u> "found standing in a junk-fax scenario under the TCPA, despite the fact that there was no evidence that anyone ever printed or saw the junk faxes at issue" because "[i]t was enough the junk faxes made the fax line unavailable

---

and an invasion of privacy, regardless of the type of call." <u>TCPA</u>, PL 102-243, 105 Stat. 2394, § 2(13). (emphasis added)

[4] <u>Lujan</u>, 504 U.S. at 560 (Kennedy, J., concurring in part and concurring in the judgment).

[5] As <u>Spokeo</u> explains, even for procedural rights, a "risk of real harm" can satisfy Article III.  <u>Spokeo</u>, 136 S.Ct. at 1549.

[6] (citing <u>Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.</u>, 781 F.3d 1245, 1252 (11th Cir.2015)).

for legitimate purposes." Id. at *2.[7] In denying the motion to dismiss, the court, citing Palm Beach, held that "a violation of the TCPA is a concrete injury" and "[b]ecause the [p]laintiffs allege that the calls were made to their personal cell phone numbers, they have suffered particularized injuries because their cell phone lines were unavailable for legitimate use during the unwanted calls." Id. Thus, as in Rogers, where a plaintiff alleges a violation of the TCPA premised upon receiving unwanted autodialed calls to his cellular telephone number, like the Plaintiff here has in the Amended Complaint (Dkt. 15), he has sufficiently alleged Article III standing.

In Spokeo, the defense bar sought a ruling that would have eviscerated causes of action seeking statutory damages. But the Supreme Court did no such thing. Instead, it issued a narrow ruling vacating the Ninth Circuit's decision solely on the basis that its "analysis focused on the second characteristic [of injury-in-fact] (particularity), but it overlooked the first (concreteness)" and remanded the case to the Ninth Circuit "to consider both aspects of the injury-in-fact requirement." Id. at 1545 (emphasis in original). The Supreme Court explicitly took no position as to whether the plaintiff's injuries were in fact concrete for standing purposes. Id. at 1550. Spokeo thus creates no new law; it merely remanded the case to allow the Ninth Circuit to conduct the proper analysis. Accordingly, Spokeo creates no tension with the Eleventh Circuit's on-point decision in Palm Beach regarding injury-in-fact under the TCPA, and Palm Beach therefore remains controlling law in this Circuit on the issue before this Court.[8]

Since the Supreme Court's decision in Spokeo, numerous federal courts have similarly

---

[7] (citing Palm Beach, 781 F.3d at 1252).

[8] See Garrett v. Univ. of Ala. At Birmingham Bd. Of Trs., 344 F.3d 1288, 1292 (11th Cir. 2003) ("While an intervening decision of the Supreme Court can overrule the decision of a prior panel of our court, the Supreme Court decision must be clearly on point."); Florida League of Prof'l Lobbyists, Inc. v. Meggs, 87 F.3d 457, 462 (11th Cir.1996) ("[W]e are not at liberty to disregard binding case law that is so closely on point and has been only weakened, rather than directly overruled, by the Supreme Court.").

denied motions to dismiss in TCPA cases involving allegations of unwanted robocalls.  See Mey

v. Go Warranty, 5:15-cv-101, 2016 WL 3645195 (N.D. W.Va. 2016) (collecting cases, denying

motion to dismiss TCPA claim arising out of unwanted calls, finding that unwanted calls constitute

a concrete harm); Rogers v. Capital One Bank, 1:15-cv-4016-TWT, 2016 WL 3162592 (N.D. Ga.

2016); Adamo v. Synchrony Bank, 6:16-cv-530-Orl-37GJK, 2016 WL 3621129, at *1 (M.D. Fla.

2016). In addition, "[a] large number of pre-Spokeo cases, [] have held that unwanted robocalls

cause particularized and concrete harm, so that a plaintiff asserting a TCPA claim has Article III

standing." Mey, supra, 2016 WL 3645195 at *7 (collecting cases).

B.      OCWEN's Robocalls Caused Plaintiff Several Types of Concrete Harm

Any injury that is concrete suffices for standing, regardless of how small. "The Supreme

Court has rejected the argument that an injury must be 'significant'; a small injury, 'an identifiable

trifle,' is sufficient to confer [Article III] standing." Common Cause/Georgia v. Billups, 554 F.3d

1340, 1351 (11th Cir. 2009).[9]

Autodialed robocalls cause both tangible and intangible injuries. For consumers with

prepaid cell phones or limited-minute plans, unwanted robocalls cause tangible direct, concrete,

monetary injury by depleting limited minutes that the consumer has paid for or by causing the

consumer to incur charges for calls.  In addition, all robocalls deplete a cell phone's battery, and

the cost of electricity to recharge the phone is also a tangible harm. While small, this cost is a real

one, and the cumulative effect can be consequential, just as is true for exposure to X-rays.

The main types of intangible harm that unlawful robocalls cause include (1) invasion of

privacy, (2) intrusion upon and occupation of the capacity of the consumer's cell phone, and (3)

---

[9] (quoting United States v. Students Challenging Regulatory Agency Procedures (SCRAP), 412 U.S. 669, 689 n. 14, 93 S.Ct. 2405, 2417 n. 14, 37 L.Ed.2d 254 (1973)).

wasting the consumer's time or causing the risk of personal injury due to interruption and distraction. The allegations of Plaintiff's Amended Complaint (Dkt. 15) give rise to the inference that he incurred all of these intangible harms (see Dkt. 15, ¶¶ 10-11 (alleging that on several occasions Plaintiff answered OCWEN's calls and explained that he was not behind on his payments and instructed OCWEN to stop calling, but the calls continued), ¶ 12 (alleging that the calls were abusive and harassing, and that on numerous occasions OCWEN initiated several robocalls during the course of a single day to Plaintiff's cellular telephone number), ¶ 16 (alleging that OCWEN had placed approximately 500 robocalls to Plaintiff's cellular telephone number as of the date the Complaint was filed), ¶ 17 (alleging that OCWEN initiated each of the calls without Plaintiff's prior express consent)). All of these intangible harms meet the requirement of concreteness as interpreted by Spokeo, as discussed below.

C.      The Invasion of Plaintiff's Privacy Caused by OCWEN's Robocalls Establishes Article III Standing

        In its Motion to Dismiss, Defendant OCWEN argues, much as it did in its Notice of Decision (Dkt. 39), that "[Plaintiff's] amended complaint does not assert a concrete injury under the Telephone Consumer Protection Act, his only federal claim and the basis for this Court's subject-matter jurisdiction. Rather [Plaintiff] merely alleges that because he received communications without his consent, he is entitled to damages."  (Dkt. 45 at p. 2). However, contrary to OCWEN's contention, Plaintiff's Amended Complaint (Dkt. 15) alleges that OCWEN's continuous robocalls calls to his cellular telephone number, sometimes several times per day, totaling approximately 500 calls, despite being instructed by the Plaintiff on multiple occasions to stop calling, were harassing and abusive under the circumstances. See Dkt. 15, ¶¶ 10-12, 23.

These allegations plainly establish a concrete and particularized "injury in fact" that was caused by OCWEN's conduct: the invasion of Plaintiff's privacy. As noted above, Spokeo explains that "[i]n determining whether an intangible harm constitutes an injury in fact, … it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." Spokeo, 136 S.Ct. at 1549. The tort of invasion of privacy has itself long provided a basis for a lawsuit in both English and American courts.[10]

Moreover, even if invasion of privacy were not a harm recognized as redressable through a common law tort claim, it would meet the requirement of concreteness as interpreted by Spokeo because Congress so clearly identified it as a legally cognizable harm. As the Spokeo majority explained

> [B]ecause Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important. Thus, we said in Lujan that Congress may 'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'

Spokeo, 136 S.Ct. at 1549.

Protection of consumers' privacy rights was clearly foremost in Congress's mind when it enacted the telephone call restrictions of the TCPA. The Congressional findings accompanying the TCPA repeatedly stress the purpose of protecting consumers' privacy:

> (5) Unrestricted telemarketing, however, can be an *intrusive invasion of privacy* and, when an emergency or medical assistance telephone line is seized, a risk to public safety.

> (6) Many consumers are outraged over the proliferation of *intrusive, nuisance calls* to their homes from telemarketers.

\* \* \* \*

---

[10] See, e.g., Restatement (Second) of Torts § 652B (intrusion upon seclusion) (1965).

(9)   Individuals' *privacy rights*, public safety interests, and commercial freedoms of speech and trade must be balanced in a way that *protects the privacy of individuals* and permits legitimate telemarketing practices.

(10)  Evidence compiled by the Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a *nuisance and an invasion of privacy*.

\* \* \* \*

(12)  Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this *nuisance and privacy invasion*.

(13)  While the evidence presented to the Congress indicates that automated or prerecorded calls are *a nuisance and an invasion of privacy*, regardless of the type of call, the Federal Communications Commission should have the flexibility to design different rules for those types of automated or prerecorded calls that it finds are not considered a nuisance or invasion of privacy, or for noncommercial calls, consistent with the free speech protections embodied in the First Amendment of the Constitution.

(14)  Businesses also have complained to the Congress and the Federal Communications Commission that automated or prerecorded telephone calls *are a nuisance, are an invasion of privacy*, and interfere with interstate commerce.

Pub. L. 102–243, § 2, 105 Stat. 2394 (1991) (emphasis added) (notes to 47 U.S.C. § 227). As was forcefully stated by Senator Hollings, the TCPA's sponsor, "[autodialed] calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall." Osorio v. State Farm Bank, 746 F. 3d 1242, 1255-56 (11th Cir. 2014) (quoting 137 Cong. Rec. 30,821–30,822 (1991)).

Thus, Congress repeatedly identified the intangible harm of invasion of privacy as one of its primary concerns when it enacted the TCPA.[11] As the Supreme Court observed in Spokeo,

---

[11] "Congress has delegated to the FCC 'authority to promulgate binding legal rules' to carry out the provisions of the TCPA." Palm Beach, 781 F.3d at 1256. The FCC has acknowledged that the level of protection under the TCPA for

Congress's judgment that a harm is legally cognizable should be given great weight.

D.      The Intrusion Upon and Occupation of the Plaintiff's Cellular Telephone Line by OCWEN's Robocalls is a Concrete Injury Establishing Article III Standing

A second type of intangible harm caused to Plaintiff by OCWEN's unwanted robocalls is intrusion upon and occupation of the Plaintiff's cellular phone and phone line. The harm recognized by the ancient common law claim of trespass to chattels—the intentional dispossession of a chattel, or the use of or intermeddling with a chattel that is in the possession of another, is a close analog for this TCPA violation. See Restatement (Second) of Torts § 217 (1965). As noted in Spokeo, the harm can be actionable even if it is "difficult to prove or measure." Spokeo, 136 S.Ct. at 1549.

A number of courts have held that temporary electronic intrusion upon another person's computerized electronic equipment constitutes trespass to chattels.  See, e.g., Register.com, Inc. v. Verio, Inc., 126 F. Supp. 2d 238, 249 (S.D.N.Y. 2000) (intruding electronically into business' database to harvest e-mail addresses, without authorization, causes harm by reducing the system's capacity; and holding that "[a]lthough Register.com's evidence of any burden or harm to its computer system caused by the successive queries performed by search robots is imprecise, evidence of mere possessory interference is sufficient to demonstrate the quantum of harm necessary to establish a claim for trespass to chattels"), aff'd, 356 F.3d 393 (2d Cir. 2004); America Online, Inc. v. Nat'l Health Care Discount, Inc., 121 F. Supp. 2d 1255 (N.D. Iowa 2000); America Online, Inc. v. LCGM, Inc., 46 F. Supp. 2d 444 (E.D. Va. 1998); Hotmail Corp. v. Van$ Money Pie, Inc., 1998 WL 388389 (N.D. Cal. Apr. 16, 1998); America Online, Inc. v. IMS, 24 F. Supp.

---

wireless numbers is even greater than that of residential line consumers, finding that "the intrusion on the consumer's privacy from unwanted calls may actually be greater with wireless than wireline calls, where the calls are received on a phone that the consumer may carry at all times." In the Matter of Rules and Regulations Implementing the TCPA of 1991, Declaratory Ruling and Order, 30 FCC Rcd 7961, 8023, ¶ 124 (July 10, 2015).

2d 548 (E.D. Va. 1998) (granting summary judgment against spammer on trespass to chattels and other claims); CompuServe, Inc. v. CyberPromotions, Inc., 962 F. Supp. 1015, 1022 (S.D. Ohio 1997) (issuing preliminary injunction against spammer on theory of trespass to chattels; "[a] plaintiff can sustain an action for trespass to chattels, as opposed to an action for conversion, without showing a substantial interference with its right to possession of that chattel."); School of Visual Arts v. Kuprewicz, 771 N.Y.S.2d 804 (N.Y. Sup. Ct. 2003) (facts alleged constituting elements of trespass to chattels claim); Microsoft Corp. v. Does 1–18, 2014 WL 1338677, at *9–10 (E.D. Va. Apr. 2, 2014) ("The unauthorized intrusion into an individual's computer system through hacking, malware, or even unwanted communications supports actions under these claims"; use of "botnet" to access computers and servers without authorization states claim for trespass to chattels).

Courts have applied this tort theory to the very conduct alleged here—unwanted telephone calls. See Czech v. Wall St. on Demand, 674 F. Supp. 2d 1102, 1122 (D. Minn. 2009) (declining to dismiss cell phone owner's trespass to chattels claim against sender of unwanted text messages); Amos Financial, L.L.C. v. H&B&T Corp., 2015 WL 3953325, at *8 (N.Y. Sup. Ct. June 29, 2015) (occupying memory of answering machine and interfering with unencumbered access to phone would have been trespass to chattels if proven). Even if the consumer does not answer the call or hear the ring tone, the mere invasion of the consumer's electronic device can be considered a trespass to chattels, just as "plac[ing a] foot on another's property" is trespass. Spokeo, 136 S.Ct. at 1551 (Thomas, J., concurring).

Thus, the harm caused by unwanted robocalls to cell phones has a close relationship to the harm recognized by this ancient common law tort—a tort that protects fundamental property rights. Indeed, the TCPA can be viewed as merely applying this common law tort to a 21st-century form

15

of personal property and a 21st-century method of intrusion. Applying this ancient tort to robocalls and making redress more readily available is particularly appropriate since electronic intrusion is so much easier, and so much more readily repeated, than physical misuse of a chattel.

Indeed, as noted above, the Eleventh Circuit has recognized that "the occupation of the recipient's telephone line and fax machine" is a sufficient injury-in-fact for Article III standing in a TCPA claim. Palm Beach, supra, 781 F.3d 1245, 1250–1251 (occupation of fax machine for one minute is sufficient). Numerous federal district courts throughout the country have applied this same reasoning to the occupation of telephone lines and telephones by unwanted robocalls, as set forth infra at n.13. The Eleventh Circuit's decision in Palm Beach is consistent with the Supreme Court's ruling in Spokeo and demonstrates that this form of harm is both concrete *and* particularized.

E.    Wasting a Consumer's Time, and Causing Risk of Injury Due to Interruption and Distraction, is an Intangible Harm Establishing Article III Standing

An additional type of intangible harm that the unwanted robocalls caused includes the waste of the Plaintiff's time in tending to OCWEN's unwanted robocalls after instructing OCWEN to stop calling, including the time necessary to recount his previous conversations with OCWEN's representatives. See Amended Complaint, Dkt. 59 at ¶¶ 10-12. The first post-Spokeo decision to address robocalls squarely holds that wasting the recipient's time is a "concrete injury" that satisfies Article III:

> Here, the court is satisfied that Plaintiffs' allegations demonstrate "concrete injury" as elucidated in *Spokeo*. In *Spokeo*, the "injury" Plaintiffs incurred was arguably merely procedural and thus non-concrete. In contrast, the TCPA and [state law] violations alleged here, if proven, required Plaintiffs to waste time answering or otherwise addressing widespread robocalls. The use of the autodialer, which allegedly enabled Defendants to make massive amounts of calls at low cost and in a short period of time, amplifies the severity of this injury. As Congress and Washington State's legislature agreed, such an injury is sufficiently concrete to confer standing.

16

Booth v. Appstack, Inc., No. C13-1533JLR, 2016 WL 3030256, *6 (W.D. Wash. May 25, 2016), slip op. at 12.

A number of pre-Spokeo decisions have also recognized that lost time is an adequate injury-in-fact in TCPA and other cases, including Leung v. XPO Logistics, Inc., 2015 WL 10433667, at *4 (N.D. Ill. Dec. 9, 2015) ("Leung alleges that he lost time in responding to XPO's call. … That is enough, so XPO's motion must be denied.") and Martin v. Leading Edge Recovery Solutions., L.L.C., 2012 WL 3292838, at *3-4 (N.D. Ill. Aug. 10, 2012) ("[plaintiffs suffered an injury in fact] because they had to spend time tending to unwanted calls"). Courts have likewise reached the same conclusion outside the context of the TCPA. See, e.g., Freedom From Religion Foundation, Inc. v. Obama, 641 F.3d 803, 807 (7th Cir. 2011) ("What did provide standing, we held, is that the plaintiffs had altered their daily commute, thus incurring costs in both time and money, to avoid the unwelcome religious display."); Rex v. Chase Home Finance. L.L.C., 905 F. Supp. 2d 1111 (C.D. Cal. 2012) ("a plaintiff suffers an injury sufficient to establish Article III standing where she alleges that she lost time spent responding to the defendant's wrongful conduct and the lost time is at least indirectly attributable to the defendant's actions.").

When it enacted the TCPA, Congress repeatedly emphasized the nuisance aspect of robocalls, demonstrating that Congress considered the interruptions caused by robocalls and the time they cause consumers to waste to be among the harms it sought to remedy with the Act. As noted above, Senator Hollings made this clear: "[Robocalls] wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed." Osorio, supra, 746 F. 3d 1255-56 (quoting 137 Cong. Rec. 30,821–30,822 (1991)). Congress was also mindful to protect consumers from the burdens they face when dealing with unwanted calls. One of its findings was that "[t]echnologies that might allow consumers to avoid receiving such calls ... place an inordinate

17

burden on the consumer." Pub. L. 102–243, § 2, 105 Stat. 2394 (1991) (note to 47 U.S.C. § 227). As explained by Spokeo, courts should give weight to Congress's identification of these harms and should conclude that these harms satisfy the requirement of concreteness.

As noted above, Spokeo also holds that a risk of harm can be concrete enough to satisfy Article III. Spokeo, 136 S.Ct. at 1549. Unwanted calls meet this standard as well, as they cause a risk of injury due to interruption and distraction. "Driving while distracted" due to a cell phone call is a common cause of automobile accidents: the National Highway Traffic Safety Administration ("NHTSA") found that cell phone use contributed to 995 fatalities, or 18% of all fatalities, in distraction-related crashes in 2009.[12] Unwanted robocalls (which include both voice calls and text messages) also diminish the ability of consumers to receive emergency calls and messages, as they can drown them, or even force the consumer to turn off a cell phone's audible alert feature. These risks are both real and concrete, and satisfy the requirements outlined in Spokeo.

E.    The Vast Majority of Decisions, Consistent with Spokeo, hold that the Harm Caused by Receipt of Illegal Robocalls Meets Article III Requirements

Applying the principles outlined above, federal courts have consistently held, both pre-Spokeo[13] and post-Spokeo, that unwanted robocalls cause particularized and concrete harm, such

---

[12] See NHTSA, Distracted Driving 2009, http://www-nrd.nhtsa.dot.gov/Pubs/811379.pdf (last accessed June 20, 2016).

[13] See, e.g., Weisberg v. Kensington Professional and Associates L.L.C., 2016 WL 1948785, at *2–3 (C.D. Cal. May 3, 2016) ("Plaintiff here does not allege statutory standing, or standing based on the mere alleged violation of a federal statute. Instead, Plaintiff states his theory of actual, individual, concrete injury in the FAC: Defendant illegally contacted Plaintiff and Class members via their cellular telephones thereby causing Plaintiff and Class members to incur certain charges or reduced telephone time for which Plaintiff and Class members had previously paid by having to retrieve or administer messages left by Defendant during those illegal calls, and invading the privacy of said Plaintiff and Class members. (FAC ¶ 28.) The invasion of privacy and the allegation that the illegal calls cost Plaintiff and the class money—financial harm—are not speculative future injuries or injuries based on the violation of rights provided in a statute. ... [I]n this case, Plaintiff has alleged an invasion of his privacy and monetary damages. These allegations are much more concrete and particularized than those alleged in Spokeo and have been accepted as actual injuries in other cases"); Haysbert v. Navient Solutions, Inc., 2016 WL 890297 (C.D. Cal. Mar. 8, 2016) (allegations that calls caused stress and embarrassment and interrupted business and personal interactions are sufficient for Art. III standing);

that a plaintiff asserting a TCPA claim premised upon allegations that the defendant placed unwanted robocalls to the plaintiff's cellular telephone number without his consent establishes Article III standing.

## IV.   Conclusion

For the foregoing reasons, the Plaintiff respectfully submits that his Amended Complaint (Dkt. 15) sufficiently alleges a concrete injury caused by the conduct of OCWEN that meets the requirements for Article III standing. Accordingly, Plaintiff respectfully requests that this Court deny OCWEN's Motion to Dismiss (Dkt. 45), and order such other relief as this Court deems just

---

Abante Rooter and Plumbing, Inc. v. Birch Communications, Inc., 2016 WL 269315, at *3 (N.D. Ga. Jan. 7, 2016) (noting Congress's concern that autodialers tie up recipients' telephone lines; "To establish standing, Plaintiff need only allege that its cellular telephone line was occupied by an unsolicited call in violation of the TCPA. ... The invasion of this statutory right established by the TCPA is itself a concrete harm); Jamison v. Esurance Insurance Services, Inc., 2016 WL 320646, at *3 (N.D. Tex. Jan. 27, 2016) ("Here, Jamison alleged that when Esurance violated the TCPA, it caused her to incur cellular telephone charges or to reduce her previously-paid-for cellular telephone time, and that it invaded her privacy. Doc. 7, Pl.'s First Am. Compl. ¶ 49. At this stage, this pleading is sufficient to establish an injury in fact."); King v. Time Warner Cable, 113 F. Supp. 3d 718 (S.D.N.Y. 2015) ("The legislative history of the TCPA makes clear that the provision against autodialing was drafted to protect 'consumers who pay additional fees for cellular phones, pagers, or unlisted numbers [and] are inconvenienced and even charged for receiving unsolicited calls from automatic dialer systems.' ... In receiving 163 unsolicited calls, Plaintiff clearly experienced the very sort of inconvenience against which Congress sought to protect her. She is entitled to seek compensation for violations of this right, regardless of whether she suffered monetary damages."); Leung v. XPO Logistics, Inc., 2015 WL 10433667, at *4 (N.D. Ill. Dec. 9, 2015); Schumacher v. Credit Protection Ass'n, 2015 WL 5786139, at *5 (S.D. Ind. Sept. 30, 2015) ("We agree with CPA that 'Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing,' and that an interest in statutory damages cannot be the sole injury to satisfy Article III requirements, but that is not what has happened here. … Here, Mr. Schumacher's TCPA-created right to privacy was invaded by repeated automated calls from CPA. 'Congress referred to the interest protected by the TCPA as a "privacy" interest, noting that "[e]vidence ... indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy."'"); Wallace v. Enhanced Recovery Co., L.L.C., 2015 WL 5455937, at *5 (E.D.N.C. Sept. 16, 2015) (use of plaintiff's phone for a period of time is sufficient; "Under the TCPA, and as relevant to this case, an injury-in-fact may be established where owner of the telephone number, suing as plaintiff, demonstrates that he or she lost the use of his or her cellular telephone."); Ikuseghan v. MultiCare Health System, 2015 WL 4600818 (W.D. Wash. July 29, 2015) (using up cell phone minutes and invading privacy create Art. III standing); Boise v. ACE USA, Inc., 2015 WL 4077433, at *3 (S.D. Fla. July 6, 2015) ("Thus, Mr. Boise does not need to 'allege that he wanted to use his phone for another purpose but could not do so.' ... To establish standing, Mr. Boise needs to allege only that his line was occupied by an unsolicited call in violation of the TCPA. The statute presumes that the violation was 'intrusive' and 'potentially dangerous,' and accordingly includes a private right of action to rectify the harm."); Meyer v. Bebe Stores, Inc., 2015 WL 431148, (N.D. Cal. Feb. 2, 2015) (invasion of privacy sufficient to confer standing even though plaintiff does not allege she incurred any carrier charges for the specific text message at issue); Martin v. Leading Edge Recovery Solutions., L.L.C., 2012 WL 3292838, at *3 (N.D. Ill. Aug. 10, 2012).

and proper.

Respectfully submitted this 28th day of July, 2016,

/s/David P. Mitchell
David P. Mitchell, Esq.
Florida Bar No. 067249
MANEY & GORDON, P.A.
101 East Kennedy Blvd., Suite 3170
Tampa, Florida 33602
Telephone: (813) 221-1366
Fax: (813) 223-5920
David@MitchellConsumerLaw.com
Michelle@MitchellConsumerLaw.com
Karin@MitchellConsumerLaw.com
Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 28th day of July, 2016, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/David P. Mitchell
David P. Mitchell, Esq.